William L. Buus (Cal. Bar No. 180059)
Alexander J. Chang (Cal. Bar No. 247921)
BUUS KIM KUO & TRAN APC
4675 MacArthur Court, Suite 590
Newport Beach, California 92660
Phone:      (949) 863-9782
Fax:        (949) 863-9783
Email:      bbuus@bkktlaw.com
            achang@bkktlaw.com

Attorneys for Plaintiffs

FILED

2009 JUL 15 PM 2:07

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
SANTA ANA

BY: _____

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| LEONARD A. ALKOV and GEORGIA A. ALKOV, husband and wife; MICHAEL AMOS, an individual; RUDY B. ARCE and ENGELINE R. ARCE, husband and wife; RODOLFO AYALA, an individual; DAVID BARE, an individual; ZOYA BOKHOOR, an individual; J. JAMES BRADY and PEGGY E. BRADY, husband and wife; GLYNDA BRAGG, an individual; MICHAEL CANNON, an individual; BRENDA CANNON, an individual; CC REAL ESTATE GROUP LLC, a South Carolina limited liability company; DAVID CHRISTIAN and ANNALISA CHRISTIAN, husband and wife; LYNDA CHRISTIAN, an individual; VIBULSRI CHUNAPONGSE, an individual; JAMES K. CRAMPTON and JUNE CRAMPTON, husband and wife; THOMAS CRAMPTON, an individual; VICKI CRAMPTON, an individual; WENDY CRAWFORD, an individual; MOJDEH DANESHRAD, an individual; KENNETH E. DAVIS, an individual; SANDRA G. DAVIS, an individual; RICARDO DEPERIO and VICTORIA ALZONA, husband and wife; KAREN ESCOBAR, an individual; MANUEL ESCOBAR, JR, an individual; RON ESCOBAR, an individual; HUGH G. EVANS, an individual; JUDY A. EVANS, an individual; ESTHER E. FERANDELL, an individual; ALFREDO FIERROS and MARIA | Case No. SACV09-764 AG(RNBX) <br><br> FIRST AMENDED COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS; FRAUD; CIVIL CONSPIRACY; BREACH OF CONTRACT; AND OTHER COMMON LAW CLAIMS <br><br> JURY TRIAL DEMANDED |

FIRST AMENDED COMPLAINT

ELENA FIERROS, husband and wife;
JOSEPH D. FLORES, an individual;
ANNA FLOREY, an individual;
RONNIE FONFA, an individual;
DOUGLAS D. FUJIMOTO and CLARA
E. FUJIMOTO, husband and wife;
TODD FURUIKE, an individual;
BERNARD GERMANI JR., an
individual; EDWARD GEROVIAN and
MARIE GEROVIAN, husband and wife;
SHARON G. GROODY, an individual;
MARGARET B. GUTIERREZ, an
individual; HEARTLAND HERITAGE
ALLIANCE LLC., a Nevada limited
liability company; THOMAS E.
HEVESY, an individual; HANNELORE
HEVESY, an individual; LARRY DEAN
HEYL, an individual; ROLAND
HINSCHE and RACHEL HINSCHE,
husband and wife; CAROL J. HODNE,
an individual; DOUG O. HODNE, an
individual; PHYLLIS M. HODNE as
TRUSTEE for the PHYLLIS M.
HODNE REVOCABLE TRUST;
SUSAN S. HODNE, an individual;
HODNE CONSTRUCTION INC., a
California corporation; HODNE
FAMILY L.P., Nevada limited
partnership; LAWRIE IKEDA, an
individual; SUSUMU IKEDA, an
individual; EDWARD JERUM, an
individual; CARLOS JIMENEZ, an
individual; WILLIAM L. KIDMAN and
LAURAINE KIDMAN, husband and
wife; LINDA J. KOLBERT, an
individual; MARGARET KUHN, an
individual; STEPHEN C. KUHN, an
individual; BARRY KUHNKE, an
individual; ELAINE KUHNKE, an
individual; SUSAN LESLIE, an
individual; JEAN LOWE, an individual;
STEVE LOWE, an individual;, an
individual; MICHAEL LYONS and
CYNTHIA G. LYONS, husband and
wife; BARRY MAURER, an individual;
SEAN MCEVOY, an individual; LORI
MCMILLAN, an individual; WILLIAM
A. MCMILLAN, an individual; DAN R.
MELIOTA and LISA A. MELIOTA,
husband and wife; NATHAN G.
MENON, an individual; ARNOLD
MILLER and BARBARA MILLER,
husband and wife; BRUCE J. MROSKO
and CHRISTINE J. HOPKINS, husband
and wife; ROBERT C. PACE, an

2

1  individual; STEPHEN L. RALSTON and
   MARTHA RALSTON, husband and
2  wife; JOZSEF RAVASZ, an individual;
   REBECCA REINHARDT, an
3  individual; ANN ROSAS, an individual;
   DIXON ROSAS, an individual;
4  RICHARD  D. ROSAS and JULIA
   ROSAS, husband and wife; RANDALL
5  L. RODINE, an individual; DANNY
   RODINE, an individual; MARITZA F.
6  RODRIGUEZ, an individual; ISAAC A.
   SAAD and ROXANNE B. SAAD,
7  husband and wife; GREGORY  S.
   SARYAN and DEROUHE  SARYAN,
8  husband and wife; CHRISTOPHER  J.
   SCHNITKER and MARY S.
9  SCHNITKER, husband and wife;
   MARY SCHNITKER EXECUTOR of
10 the estate of THERESA DYER, an
   individual; ROBIN SELLS and DONNA
11 SELLS, husband and wife; ROHONI I.
   SHAIKH, an individual; HELEN M.
12 SZKORLA, an individual; TAQUETA
   FALLS L.P.,  a North Carolina limited
13 partnership; JENNIFER URANGA, an
   individual; GERALD VARNER and
14 ANITA VARNER, husband and wife;
   LEOVINER VELASQUEZ and
15 MARIEDA R. VELASQUEZ, husband
   and wife; DAVID G. WISHING, an
16 individual,

17        Plaintiffs,

18     vs.

19 JOHN ANTHONY MILLER, an
   individual aka JOHN A. MILLER, JR;
20 JAM JR. ENTERPRISES, INC., a
   Nevada corporation; THE PACSTAR
21 GROUP OF COMPANIES, LLC,  a
   Nevada limited liability company;
22 PACSTAR ALTERNATIVE ASSET
   MANAGEMENT, LLC,  California
23 limited liability company; GLOBAL
   CHOICE, LLC, a Nevada limited
24 liability company; GLOBAL CHOICE
   FUNDS, LLC, a Nevada limited liability
25 company; GLOBAL CHOICE ASSET
   MANAGEMENT, LLC, a Nevada
26 limited liability company; FORTE
   FINANCIAL PARTNERS, LIMITED
27 PARTNERSHIP,  a Nevada limited
   partnership; VESTED STANDARD,
28 LLC, a Nevada limited liability

3

FIRST AMENDED COMPLAINT; JURY TRIAL DEMAND

1  company;  IRA RESOURCES, INC., a
   California corporation; THEODORE R.
2  STAREN, an individual; and DOES 1
   through 10, inclusive,

3          Defendants.

4

5

6          Plaintiffs allege as follows:

7                  **JURISDICTION AND VENUE**

8          1.      This action arises under Section 5 of the Securities Act of 1933, as

9  amended (the "Securities Act"), 15 U.S.C. section 77e; under Sections 10(b) and 20

10 of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. sections

11 78j(b) and 78t, respectively, and Rule 10b-5 promulgated by the Securities and

12 Exchange Commission (the "SEC"); under California Civil Code section 1689.2;

13 under California Securities laws, California Corporation Code sections 25110,

14 25401 and 25503; and under applicable principles of state common law.

15         2.      The jurisdiction of this Court is based upon Section 22 of the Securities

16 Act, 15 U.S.C. section 77v; upon Section 27 of the Exchange Act, 15 U.S.C. Section

17 78aa; upon 28 U.S.C. section 1338(a); and upon principles of supplemental

18 jurisdiction set forth in 28 U.S.C. Section 1367.

19         3.      Venue is proper in this District under 28 U.S.C. Section 1391.  Several

20 Defendants reside within this judicial district, and virtually all of the acts

21 complained of herein occurred within this judicial district, including but not limited

22 to the making of materially false and misleading statements as described below.

23         4.      In connection with the acts and conduct alleged in this Complaint, the

24 defendants directly and indirectly used means and instrumentalities of interstate

25 commerce, including the United States mails and interstate telephone and email, as

26 alleged below.

27 ///

28 ///

                                      4

## PARTIES

**Plaintiffs:**

5.    Plaintiff LEONARD A. ALKOV and GEORGIA A. ALKOV (collectively "ALKOV" unless otherwise specifically referred) are husband and wife whose primary place of residence is in Los Angeles County, California.

6.    Plaintiff MICHAEL AMOS ("AMOS") is an individual whose primary place of residence is in the State of South Carolina.

7.    Plaintiffs RUDY B. ARCE and ENGELINE R. ARCE (collectively "ARCE" unless otherwise specifically referred) are husband and wife whose primary place of residence is in San Diego County, California.

8.    Plaintiff RODOLFO AYALA ("AYALA") is an individual whose primary place of residence is in San Diego County, California.

9.    Plaintiff DAVID BARE ("BARE") is an individual whose primary place of residence is in San Bernardino County, California.

10.    Plaintiff ZOYA BOKHOOR ("BOKHOOR") is an individual whose primary place of residence is in Los Angeles County, California.

11.    Plaintiff J. JAMES BRADY and PEGGY E. BRADY (collectively "BRADY" unless otherwise specifically referred) are husband and wife whose primary place of residence is in the State of South Carolina.

12.    Plaintiff GLYNDA BRAGG ("BRAGG") is an individual whose primary place of residence is in San Bernardino County, California.

13.    Plaintiff MICHAEL CANNON ("M. CANNON") is an individual whose primary place of residence is in the State of South Carolina.

14.    Plaintiff BRENDA CANNON ("B. CANNON") is an individual whose primary place of residence is in the State of South Carolina.

15.    Plaintiff CC REAL ESTATE GROUP LLC ("CC REAL ESTATE GROUP LLC") is a limited liability company organized and existing under the laws of the State of South Carolina with its principal place of business located in the State

5

1   of South Carolina.

2   16.   Plaintiff DAVID CHRISTIAN and ANNALISA CHRISTIAN

3   (collectively "CHRISTIAN" unless otherwise specifically referred) are husband and

4   wife whose primary place of residence is in Calaveras County, California.

5   17.   Plaintiff LYNDA CHRISTIAN ("L. CHRISTIAN") is an individual

6   whose primary place of residence is in Calaveras County, California.

7   18.   Plaintiff VIBULSRI CHUNAPONGSE ("CHUNAPONGSE") is an

8   individual whose primary place of residence is in Los Angeles County, California.

9   19.   Plaintiff JAMES K. CRAMPTON and JUNE CRAMPTON

10   (collectively "CRAMPTON" unless otherwise specifically referred) are husband and

11   wife whose primary place of residence is in Los Angeles County, California.

12   20.   Plaintiff THOMAS CRAMPTON ("T. CRAMPTON") is an individual

13   whose primary place of residence is in the State of Oregon.

14   21.   Plaintiff VICKI CRAMPTON ("V. CRAMPTON") is an individual

15   whose primary place of residence is in the State of Oregon.

16   22.   Plaintiff WENDY CRAWFORD ("CRAWFORD") is an individual

17   whose primary place of residence is in Monterey County, California.

18   23.   Plaintiff MOJDEH DANESHRAD ("DANESHRAD") is an individual

19   whose primary place of residence is in Los Angeles County, California.

20   24.   Plaintiff KENNETH E. DAVIS ("K. DAVIS") is an individual whose

21   primary place of residence is in Orange County, California.

22   25.   Plaintiff SANDRA G. DAVIS ("S. DAVIS") is an individual whose

23   primary place of residence is in Los Angeles County, California.

24   26.   Plaintiff RICARDO DEPERIO and VICTORIA ALZONA (collectively

25   "DEPERIO" unless otherwise specifically referred) are husband and wife whose

26   primary place of residence is in the State of Arizona.

27   27.   Plaintiff KAREN ESCOBAR ("K. ESCOBAR") is an individual whose

28   primary place of residence is in Los Angeles County, California.

FIRST AMENDED COMPLAINT; JURY TRIAL DEMAND

1   28.   Plaintiff MANUEL ESCOBAR, JR. ("M. ESCOBAR") is an individual
2   whose primary place of residence is in Orange County, California.

3   29.   Plaintiff RON ESCOBAR ("R. ESCOBAR") is an individual whose
4   primary place of residence is in Los Angeles County, California.

5   30.   Plaintiff HUGH G. EVANS ("H. EVANS") is an individual whose
6   primary place of residence is in Shasta County, California.

7   31.   Plaintiff JUDY A. EVANS ("J. EVANS") is an individual whose
8   primary place of residence is in Shasta County, California.

9   32.   Plaintiff ESTHER E. FERANDELL ("FERANDELL") is an individual
10   whose primary place of residence is in San Diego County, California.

11   33.   Plaintiff ALFREDO FIERROS and MARIA ELENA FIERROS
12   (collectively "FIERROS" unless otherwise specifically referred) are husband and
13   wife whose primary place of residence is in San Diego County, California.

14   34.   Plaintiff JOSEPH D. FLORES ("FLORES") is an individual whose
15   primary place of residence is in Los Angeles County, California.

16   35.   Plaintiff ANNA FLOREY ("FLOREY") is an individual whose primary
17   place of residence is in San Diego County, California.

18   36.   Plaintiff RONNIE FONFA ("FONFA") is an individual whose primary
19   place of residence is in Los Angeles County, California.

20   37.   Plaintiff DOUGLAS D. FUJIMOTO and CLARA E. FUJIMOTO
21   (collectively "FUJIMOTO" unless otherwise specifically referred) are husband and
22   wife whose primary residence is in Los Angeles County, California.

23   38.   Plaintiff TODD FURUIKE ("FURUIKE") is an individual whose
24   primary residence is in Los Angeles County, California.

25   39.   Plaintiff BERNARD GERMANI JR. ("GERMANI") is an individual
26   whose primary residence is in Los Angeles County, California.

27   40.   Plaintiff EDWARD GEROVIAN and MARIE GEROVIAN
28   (collectively "GEROVIAN" unless otherwise specifically referred) are husband and

FIRST AMENDED COMPLAINT; JURY TRIAL DEMAND

1 | wife whose primary residence is in Los Angeles County, California.

2 |      41.    Plaintiff SHARON G. GROODY ("GROODY") is an individual whose
3 | primary residence is in Riverside County, California.

4 |      42.    Plaintiff MARGARET B. GUTIERREZ ("GUTIERREZ") is an
5 | individual whose primary residence is in Los Angeles County, California.

6 |      43.    Plaintiff    HEARTLAND    HERITAGE    ALLIANCE    LLC
7 | ("HEARTLAND HERITAGE") is a limited liability company organized and
8 | existing under the laws of the State of Nevada with its principal place of business
9 | located in Clark County, Nevada.

10 |      44.    Plaintiff THOMAS E. HEVESY ("T. HEVESY") is an individual
11 | whose primary residence is in San Diego County, California.

12 |      45.    Plaintiff HANNELORE HEVESY ("H. HEVESY") is an individual
13 | whose primary residence is in San Diego County, California.

14 |      46.    Plaintiff LARRY DEAN HEYL ("HEYL") is an individual whose
15 | primary residence is in Orange County, California.

16 |      47.    Plaintiffs ROLAND HINSCHE and RACHEL HINSCHE (collectively
17 | "HINSCHE" unless otherwise specifically referred) are husband and wife whose
18 | primary residence is in the State of Nevada.

19 |      48.    Plaintiff CAROL J. HODNE ("C. HODNE") is an individual whose
20 | primary residence is in the State of Iowa.

21 |      49.    Plaintiff DOUG O. HODNE ("D. HODNE") is an individual whose
22 | primary residence is in Los Angeles County, California.

23 |      50.    Plaintiff PHYLLIS M. HODNE ("P. HODNE"), as TRUSTEE for the
24 | PHYLLIS M. HODNE REVOCABLE TRUST, is an individual whose primary
25 | residence is in the State of Iowa.

26 |      51.    Plaintiff SUSAN S. HODNE ("S. HODNE") is an individual whose
27 | primary residence is in Los Angeles County, California.

28 |      52.    Plaintiff    HODNE    CONSTRUCTION,    INC    ("HODNE

8

1   CONSTRUCTION") is a corporation duly organized and existing under the laws of

2   the State of California with its principal place of business located in Los Angeles

3   County, California.

4        53.    Plaintiff HODNE FAMILY LP ("HODNE FAMILY LP") is a Nevada

5   limited partnership with its principal place of business located in Los Angeles

6   County, California.

7        54.    Plaintiff LAWRIE IKEDA ("L. IKEDA") is an individual whose

8   primary residence is in Los Angeles County, California.

9        55.    Plaintiff SUSUMU IKEDA ("S. IKEDA") is an individual whose

10  primary residence is in Los Angeles County, California.

11       56.    Plaintiff EDWARD JERUM ("JERUM") is an individual whose

12  primary residence is in San Diego County, California.

13       57.    Plaintiff CARLOS JIMENEZ ("JIMENEZ") is an individual whose

14  primary residence is in Los Angeles County, California.

15       58.    Plaintiff   WILLIAM   KIDMAN   and   LAURAINE   KIDMAN

16  (collectively "KIDMAN" unless otherwise specifically referred) are husband and

17  wife whose primary residence is in Los Angeles County, California.

18       59.    Plaintiff LINDA J. KOLBERT ("L. KOLBERT") is an individual

19  whose primary residence is in the State of Michigan.

20       60.    Plaintiff MARGARET KUHN ("M. KUHN") is an individual whose

21  primary residence is in San Diego County, California.

22       61.    Plaintiff STEPHEN C. KUHN ("S. KUHN") is an individual whose

23  primary residence is in San Diego County, California.

24       62.    Plaintiff BARRY KUHNKE ("B. KUHNKE") is an individual whose

25  primary residence is in Orange County, California.

26       63.    Plaintiff ELAINE KUHNKE ("E. KUHNKE") is an individual whose

27  primary residence is in Orange County, California.

28       64.    Plaintiff SUSAN LESLIE ("LESLIE") is an individual whose primary

FIRST AMENDED COMPLAINT; JURY TRIAL DEMAND

1  residence is in San Diego County, California.

2      65.    Plaintiff JEAN LOWE ("J. LOWE") is an individual whose primary

3  residence is in Orange County, California.

4      66.    Plaintiff STEVE LOWE ("S. LOWE") is an individual whose primary

5  residence is in Orange County, California.

6      67.    Plaintiff MICHAEL LYONS and CYNTHIA G. LYONS (collectively

7  "LYONS" unless otherwise specifically referred) are husband and wife whose

8  primary residence is in San Diego County, California.

9      68.    Plaintiff BARRY MAURER ("MAURER") is an individual whose

10  primary residence is in the State of Missouri.

11      69.    Plaintiff SEAN MCEVOY ("MCEVOY") is an individual whose

12  primary residence is in Orange County, California.

13      70.    Plaintiff LORI MCMILLAN ("L. MCMILLAN") is an individual

14  whose primary residence is in Santa Clara County, California.

15      71.    Plaintiff WILLIAM A. MCMILLAN ("W. MCMILLAN") is an

16  individual whose primary residence is in Santa Clara County, California.

17      72.    Plaintiff DAN R. MELIOTA and LISA A. MELIOTA (collectively

18  "MELIOTA" unless otherwise specifically referred) are husband and wife whose

19  primary residence is in Los Angeles County, California.

20      73.    Plaintiff NATHAN G. MENON ("MENON") is an individual whose

21  primary residence is in Santa Clara County, California.

22      74.    Plaintiff ARNOLD MILLER and BARBARA MILLER (collectively

23  "MILLER" unless otherwise specifically referred) are husband and wife whose

24  primary residence is in San Diego County, California.

25      75.    Plaintiff BRUCE J. MROSKO and CHRISTINE J. HOPKINS

26  (collectively "MROSKO" unless otherwise specifically referred) are husband and

27  wife whose primary residence is in Oceanside, San Diego County, California.

28      76.    Plaintiff ROBERT C. PACE ("PACE") is an individual whose primary

FIRST AMENDED COMPLAINT; JURY TRIAL DEMAND

1  residence is in Orange County, California.

2      77.   Plaintiff STEPHEN L. RALSTON and MARTHA RALSTON

3  (collectively "RALSTON" unless otherwise specifically referred) are husband and

4  wife whose primary residence is in Orange County, California.

5      78.   Plaintiff JOZSEF RAVASZ ("RAVASZ") is an individual whose

6  primary residence is in Los Angeles County, California.

7      79.   Plaintiff REBECCA REINHARDT ("REINHARDT") is an individual

8  whose primary residence is in Los Angeles County, California.

9      80.   Plaintiff ANN ROSAS ("A. ROSAS") is an individual whose primary

10  residence is in Orange County, California.

11      81.   Plaintiff DIXON ROSAS ("D. ROSAS") is an individual whose

12  primary residence is in Orange County, California.

13      82.   Plaintiff RICHARD D. ROSAS and JULIA ROSAS (collectively

14  "ROSAS" unless otherwise specifically referred) are husband and wife whose

15  primary residence is in Los Angeles County, California.

16      83.   Plaintiff RANDALL L. RODINE ("R. RODINE) is an individual

17  whose primary residence is in the State of Indiana.

18      84.   Plaintiff DANNY RODINE ("D. RODINE) is an individual whose

19  primary residence is in the State of Indiana.

20      85.   Plaintiff MARITZA F. RODRIGUEZ ("RODRIGUEZ") is an

21  individual whose primary residence is in Los Angeles County, California.

22      86.   Plaintiff ISAAC A. SAAD and ROXANNE B. SAAD (collectively

23  "SAAD" unless otherwise specifically referred) are husband and wife whose

24  primary residence is in the State of South Carolina.

25      87.   Plaintiff GREGORY S. SARYAN and DEROUHE SARYAN

26  (collectively "SARYAN" unless otherwise specifically referred) are husband and

27  wife whose primary residence is in Los Angeles County, California.

28      88.   Plaintiff CHRISTOPHER J. SCHNITKER and MARY S.

FIRST AMENDED COMPLAINT; JURY TRIAL DEMAND

1   SCHNITKER (collectively "C. SCHNITKER" unless otherwise specifically

2   referred) are husband and wife whose primary residence is in Orange County,

3   California.

4        89.   Plaintiff MARY SCHNITKER ("M. SCHNITKER"), as executor of the

5   estate of THERESA DYE, is an individual whose primary residence is in Orange

6   County, California.

7        90.   Plaintiff ROBIN SELLS and DONNA SELLS (collectively "SELLS"

8   unless otherwise specifically referred) are husband and wife whose primary

9   residence is in the State of Washington.

10       91.   Plaintiff ROHONI I. SHAIKH ("SHAIKH") is an individual whose

11   primary residence is in Los Angeles County, California.

12       92.   Plaintiff HELEN M. SZKORLA ("SZKORLA") is an individual whose

13   primary residence is in San Diego County, California.

14       93.   Plaintiff TAQUETA FALLS LP ("TAQUETA FALLS") is a North

15   Carolina limited partnership with its principal place of business located in the State

16   of North Carolina.

17       94.   Plaintiff JENNIFER URANGA ("URANGA") is an individual whose

18   primary residence is in Los Angeles County, California.

19       95.   Plaintiff GERALD VARNER and ANITA VARNER (collectively

20   "VARNER" unless otherwise specifically referred) are husband and wife whose

21   primary residence is in Orange County, California.

22       96.   Plaintiff LEOVINER VELASQUEZ and MARIEDA R. VELASQUEZ

23   (collectively "VELASQUEZ" unless otherwise specifically referred) are husband

24   and wife whose primary residence is in Riverside County, California.

25       97.   Plaintiff DAVID G. WISHING ("WISHING") is an individual whose

26   primary residence is in San Diego County, California.

27   **Defendants:**

28       98. Defendant JOHN ANTHONY MILLER, also known as "JOHN A.

1 MILLER, JR", is an individual whose principal place of residence is in San

2 Clemente, Orange County, California.

3      99.    Defendant JAM JR. ENTERPRISES, INC. ("JAM") is a corporation

4 organized and existing under the laws of the State of Nevada, with its principal

5 place of business located in Las Vegas, Clark County, Nevada.

6      100.   Defendant THE PACSTAR GROUP OF COMPANIES, LLC

7 ("PACSTAR") is a limited liability company organized under the laws of the State

8 of Nevada with its principal place of business located in Las Vegas, Clark County,

9 Nevada. Plaintiffs are informed and believe and thereon allege that PACSTAR's

10 entity status is currently revoked by the Nevada Secretary of State.

11      101.   Defendant PACSTAR ALTERNATIVE ASSET MANAGEMENT,

12 LLC ("PACSTAR MANAGEMENT") is a limited liability company organized

13 under the laws of the State of California with its principal place of business located

14 in Las Vegas, Clark County, Nevada.

15      102.   Defendant GLOBAL CHOICE, LLC ("GLOBAL CHOICE") is a

16 limited liability company organized under the laws of the State of Nevada with its

17 principal place of business located in Las Vegas, Clark County, Nevada. Plaintiffs

18 are informed and believe and thereon allege that GLOBAL CHOICE's entity status

19 is currently defaulted by the Nevada Secretary of State.

20      103.   Defendant GLOBAL CHOICE FUNDS, LLC ("GLOBAL FUNDS") is

21 a limited liability company organized and existing under the laws of the State of

22 Nevada, with its principal place of business located in Las Vegas, Clark County,

23 Nevada.

24      104.   Defendant GLOBAL CHOICE ASSET MANAGEMENT, LLC

25 ("GLOBAL ASSET)" is a limited liability company organized under the laws of the

26 State of Nevada with its principal place of business located in Las Vegas, Clark

27 County, Nevada. Plaintiffs are informed and believe and thereon allege that

28 GLOBAL ASSET's entity status is currently defaulted by the Nevada Secretary of

1 State.

2    105.  Defendant  FORTE  FINANCIAL  PARTNERS,  LIMITED
3 PARTNERSHIP ("FORTE FINANCIAL") is a limited partnership organized and
4 existing under the laws of the State of Nevada with its principal place of business
5 located in Las Vegas, Clark County Nevada. Plaintiffs are informed and believe and
6 thereon allege that at all material times alleged in this Complaint, Defendant JAM
7 acted as a general partner for FORTE FINANCIAL. Plaintiffs are also informed and
8 believe and thereon allege that FORTE FINANCIAL's entity status is currently
9 defaulted by the Nevada Secretary of State.

10    106.  Defendant VESTED STANDARD, LLC ("VESTED STANDARD") is
11 a limited liability company organized and existing under the laws of the State of
12 Nevada with its principal place of business located in Las Vegas, Clark County,
13 Nevada. Plaintiffs are informed and believe and thereon allege that at all material
14 times alleged in this Complaint, VESTED STANDARD was a general partner of
15 Defendant FORTE FINANCIAL.

16    107.  Defendant  IRA  RESOURCES,  INC.  ("IRA  RESOURCES")  is  a
17 corporation organized and existing under the laws of the State of California with its
18 principal place of business located in La Jolla, San Diego County, California.

19    108.  Defendant THEODORE R. STAREN ("STAREN") is an individual
20 whose principal place of residence is located in San Diego County, California.

21    109.  The true names and respective capacities of  DOE Defendants 1
22 through 10, inclusive, whether affiliate, associate, corporate, individual, partnership,
23 or otherwise, are presently unknown to Plaintiffs who therefore  sue such DOE
24 Defendants by their respective fictitious names.  Plaintiffs will seek leave of court to
25 further amend this complaint to allege the true names and capacities of such DOE
26 Defendants when their respective names and capacities have been fully ascertained.
27 Upon  information  and  belief,  these  DOE  Defendants  1  through  10  are  co-
28 conspirators with respect to the tortious and unlawful activity described herein.

FIRST AMENDED COMPLAINT; JURY TRIAL DEMAND

110.   Plaintiffs are informed and believe and thereon allege that, at all times herein mentioned, Defendants, and each of them, were the agents, servants, employees, partners, joint venturers, subsidiaries, parent corporations, sureties and successors in interest of one another, and in doing the things herein alleged, were acting within the course, scope and purpose of such agency, employment, partnership, joint venture, subsidiary-parent relationship, sureties, and succession with the knowledge, consent, approval, and ratification of the remaining Defendants, and each of them.

111.   Plaintiffs are informed and believe, and upon such information and belief alleges, that Defendant JAM, PACSTAR, PACSTAR MANAGEMENT, GLOBAL CHOICE, GLOBAL FUNDS, GLOBAL ASSET, FORTE FINANCIAL VESTED STANDARD and DOES 1 through 10, inclusive, are, and at all times herein mentioned were, the alter egos of Defendant MILLER and of each other insofar as said Defendants were mere shells, instrumentalities, and conduits through which Defendant MILLER carried on his business in the names of said entity Defendants with the exercise of such complete control and dominance of such businesses to such an extent that any individuality or separateness of said entity Defendants do not and at all times herein alleged did not, exist. Plaintiffs are further informed and believe and thereon allege that said Defendants are, and at all times herein mentioned were, controlled, dominated, and operated by Defendant MILLER as his individual business and alter ego, in that the activities and businesses of said Defendants were carried out without holding directors' or shareholders' or managers' meetings and without any records or minutes of any proceedings, and that Defendant MILLER entered into personal transactions with those entity Defendants that he so controlled and dominated as alleged above. Plaintiff are further informed and believe, and thereon allege, that Defendants JAM, PACSTAR, PACSTAR MANAGEMENT, GLOBAL CHOICE, GLOBAL FUNDS, GLOBAL ASSET, FORTE FINANCIAL, VESTED STANDARD and

FIRST AMENDED COMPLAINT; JURY TRIAL DEMAND

1  DOES 1 through 10, inclusive, were conceived, intended, and used by MILLER as
2  devices to avoid personal liability by substituting financially insolvent corporations
3  and limited liability companies and or limited partnerships in place of himself to
4  implement the fraudulent investment schemes alleged hereinbelow. Defendants
5  JAM, PACSTAR, PACSTAR MANAGEMENT, GLOBAL CHOICE, GLOBAL
6  FUNDS, GLOBAL ASSET, FORTE FINANCIAL, VESTED STANDARD and
7  DOES 1 through 10, inclusive, are, and at all times herein mentioned were, so
8  inadequately capitalized that, compared with the business to be done by MILLER
9  and the risks of loss, their capitalization was illusory or trifling. Adherence to the
10  fiction of the separate existence of said Defendants as entities distinct from
11  MILLER would permit abuse of the corporate, limited liability company or limited
12  partnership privileges, and great injustice will result and fraud will be sanctioned, all
13  to the irreparable damage and injury of Plaintiffs who, individually and collectively,
14  will be unable to recover, or enforce any recover, for those losses and damages
15  alleged herein.

16  **COMMON FACTS**

17  112.  Beginning in 2000 and continuing through November 2008, Defendant
18  MILLER, acting for himself and together at various times with all other defendants
19  herein, devised, participated in and executed a scheme, or series of schemes, to
20  defraud a multitude of investors of tens of millions of dollars and did so by means of
21  material false and fraudulent pretenses, representations, promises and concealment
22  of material facts. The Plaintiffs herein were, individually and collectively, among
23  those investors defrauded by MILLER and by the other defendants in the manners
24  alleged hereinbelow.

25  113.  MILLER operated the scheme by soliciting each of the Plaintiffs, either
26  directly himself or through Defendants STAREN and/or DOES 1 through10, to
27  place money into Defendants JAM, PACSTAR, PACSTAR MANAGEMENT,
28  GLOBAL CHOICE, GLOBAL FUNDS, GLOBAL ASSET, FORTE FINANCIAL,

FIRST AMENDED COMPLAINT; JURY TRIAL DEMAND

VESTED STANDARD, and DOES 1 through 10, inclusive, which would then, according to the representations and solicitations made by MILLER,  invest such monies into various enterprises such as real estate ventures, foreign currency trading, oil wells in Louisiana and in Oklahoma, start-up companies and other companies and others. Much of the funds solicited by MILLER were retirement funds held by many of the Plaintiffs in qualified IRA accounts and pension plans which the subject Plaintiffs  caused their respective custodians and pension plan trustees to roll-over or transfer to Defendant IRA RESOURCES as new custodian therefor; subsequently, IRA RESOURCES established "self-directed"   IRA accounts on behalf of  the Plaintiffs and, based on their instructions as provided them by MILLER  and STAREN, then transferred the new custodial funds to Defendant FORTE FINANCIAL for "investment" into the claimed  enterprises conducted by or through JAM, PACSTAR, PACSTAR MANAGEMENT, GLOBAL CHOICE, GLOBAL FUNDS, GLOBAL  ASSET, FORTE FINANCIAL, VESTED STANDARD and/or DOES 1 through 10 as alleged above.  Plaintiffs are informed and believe and thereon allege that no investments were made by the defendants as MILLER and STAREN represented when they solicited and procured Plaintiffs' monies and that such monies were used and expended for other purposes including the personal uses of MILLER, STAREN, JAM, PACSTAR, PACSTAR MANAGEMENT, GLOBAL CHOICE,  GLOBAL FUNDS, GLOBAL ASSET, FORTE FINANCIAL, VESTED STANDARD and/or DOES 1 through 10.

114.   In each and every instance of solicitation of funds for placement with any or all of the Defendants,  MILLER, or  STAREN and/or DOES 1-10 acting on behalf of MILLER who paid them referral fees or other compensation therefore, represented to each investor that MILLER would be "managing" the funds by and through the entity defendants which would  implement the "investments" alleged above.  MILLER, STAREN, and DOES 1-10 represented to the Plaintiffs and each of them that each would realize returns ranging between 10% and 18% per annum

FIRST AMENDED COMPLAINT; JURY TRIAL DEMAND

from the foregoing investments.  When monies were solicited from each Plaintiff, MILLER, and/ or  STAREN,  and/or  DOES 1-10, promised to "guaranty" such returns, and the capital on which such returns were promised, which MILLER and STAREN promised that they would repay or remit anytime any of the Plaintiffs so requested.  Such guaranties and promises were memorialized by notes, some called "Promissory Note", others called "Real Estate Collaterized Note", others called "IRA Real Estate Collateralized Note", others called "90 Day Real Estate Collateralized Note" (hereinafter referred to as "note" or "notes") which MILLER and STAREN, or sometimes just MILLER,  executed in their personal capacities, as well as on behalf of Defendants JAM, PACSTAR, PACSTAR MANAGEMENT, GLOBAL CHOICE, GLOBAL FUNDS, GLOBAL ASSET, FORTE FINANCIAL and/or VESTED STANDARD,  which they  delivered to each Plaintiff  at the time, or after,  each Plaintiff paid over to MILLER or to STAREN or to any of the entity Defendants for the investment purpose or purposes alleged above. The note, or notes, given to each of the Plaintiffs set forth the principal sum with a specific repayment date and were expressed as "loans" to MILLER. The collateral set forth in the notes were specifically-identified lots in a real estate subdivision in Oklahoma and/or by interests in MILLER's residential real property located in San Clemente, California, and/or interests in real property located in Dana Point, California and/or in real property located in Las Vegas, Nevada  which MILLER claimed to own or to have assignable interest; no recordable instrument such as a trust deed or other security instrument was provided any of the Plaintiffs that would allow perfection of the security interest represented or referred in each note. When MILLER purportedly "collateralized" or "secured" any note with the above-mentioned lots in Oklahoma,  he  did  not  have  title  to  any,  and  to  the  extent  he  similarly "collateralized" or "secured each note with his San Clemente, CA residential property, MILLER duplicated the security interests so that many of the Plaintiffs were purportedly given security interests already given to others. The purported

FIRST AMENDED COMPLAINT; JURY TRIAL DEMAND

1   collateral or security given for each note held by each Plaintiff was given to induce
2   each Plaintiff to pay over money to MILLER but was valueless or non-existent at
3   the time and times MILLER made and delivered each such note.

4       115. In order to further his fraudulent investment scheme, MILLER
5   attempted to create an aura of credibility for his "investment program" and for his
6   competent performance as a "fund manager" by paying out to some, but not all,  of
7   the Plaintiffs amounts equal to those principal amounts paid over to MILLER as
8   well as "interest earnings" set forth in aforesaid account statements; however, such
9   amounts paid over came from sums paid over to MILLER by other Plaintiffs and
10  supposedly held in accounts for them. MILLER did these things as alleged herein to
11  show the recipient Plaintiff that such Plaintiff's "investment" had been successful
12  and to induce such Plaintiff to contact other individuals to recommend that they also
13  invest with MILLER and that MILLER would make good on his investment
14  representations. Several of such recipient Plaintiffs did do so and MILLER was able
15  to solicit and receive funds from others as a result. Payments made to recipient
16  Plaintiffs, whether characterized by MILLER as principal or interest or other
17  earning, was made from money given over to MILLER by other Plaintiffs or
18  individuals not parties to this action that was intended as an "investment" to be
19  "managed" by MILLER.

20      116. Following his executions and deliveries of the respective notes to the
21  Plaintiffs and each of them, MILLER, PACSTAR, PACSTAR MANAGEMENT,
22  GLOBAL CHOICE, GLOBAL FUNDS, GLOBAL ASSET and/or FORTE
23  FINANCIAL occasionally provided each Plaintiff with written summaries, or
24  account statements, via mail or email, purportedly showing the earnings being
25  periodically generated by their respective capital "investments". The purpose of the
26  account statements was to provide the appearance of credibility to MILLER's
27  fraudulent investment scheme, and to perpetuate the investment fraud itself,  and to
28  maintain complacency among the purported account holders, including the Plaintiffs

FIRST AMENDED COMPLAINT; JURY TRIAL DEMAND

herein, not to make repayment demands or take action to recover their respective investment sums which MILLER, STAREN, PACSTAR, PACSTAR MANAGEMENT, GLOBAL CHOICE, GLOBAL FUNDS, GLOBAL ASSET FORTE FINANCIAL and VESTED STANDARD did not intend to repay; in fact, none of the funds solicited from the Plaintiffs were placed into any account represented by the account statements nor did such funds generate or earn any actual interest or earnings maintained or held in any of such "accounts".

117. All funds paid over to MILLER by the Plaintiffs and each of them were deposited to an Wells Fargo checking account held by JAM in Las Vegas Nevada; MILLER, who controlled JAM as its principal officer, director and shareholder and was signatory on the aforesaid Wells Fargo account, disbursed the funds therefrom to payees other than the investment entities or sources that MILLER had represented to each Plaintiff the MILLER would place for "investment"; some of the funds were paid over by MILLER, through JAM, to PACSTAR, or to PACSTAR MANAGEMENT, or to GLOBAL CHOICE, or to GLOBAL FUNDS, or to GLOBAL ASSET, or to FORTE FINANCIAL, or to VESTED STANDARD, and were subsequently distributed, at MILLER's direction, to entities or persons, including but not limited to MILLER and/or STAREN, for their uses other than the investments  MILLER had represented. The Plaintiffs presently lack sufficient information or belief to ascertain or determine where, ultimately, their investment amounts solicited by MILLER had been placed in fact and will seek leave of court to amend this pleading to allege such facts when and if such facts become known.

118. In each instance when he solicited and procured money from each of the Plaintiffs, MILLER, acting on his behalf as well as on behalf of JAM, PACSTAR, PACSTAR  MANAGEMENT, GLOBAL CHOICE, GLOBAL FUNDS, GLOBAL  ASSET,  FORTE FINANCIAL, or VESTED STANDARD, STAREN, represented to each Plaintiff that the amount or amounts solicited for investment would never be at risk; that each investor would earn guaranteed returns

of at least 15%-to-18% or more per annum; that any amount invested would be backed by good and valuable collateral; that MILLER was qualified to invest monies deposited with him including retirement savings account monies; that the amounts deposited with him would earn interest and profits that MILLER would pay each month to the Plaintiff or to the account of the Plaintiff that MILLER would establish for the benefit of the Plaintiff/investor; that MILLER would return all amounts to each Plaintiff, including principal and any accrued interest or earnings, upon demand. In truth and in fact, as MILLER knew at the time he made the foregoing representations and assurances to the Plaintiffs and each of them, that the "invested" principal from each Plaintiff/investor was at great risk insofar as MILLER did not intend to "invest" such funds in any investment enterprise that he represented; that he had never made any significant returns on any past investments he had made; that he intended to use monies paid over to him by some of the Plaintiffs to pay off the repayment demands of other Plaintiffs including interest and earnings that MILLER intended to represent as having been earned or generated for the benefit of that Plaintiff; that he never intended to make good on any "guaranty" of money or repayment of money that he solicited from any of the Plaintiffs; that such "investments" were not nor would be secured by any collateral or any collateral that MILLER could properly give. Further, at the time he solicited monies from the Plaintiffs and each of them, MILLER failed to disclose, where he was duty-bound to do so, that he had no training or experience that qualified him to invest as he had represented to the Plaintiffs and each of them; that he did not have legal title to the collateral that he represented he would secure each Plaintiff's "investment"; that he had never invested funds in the foreign currency market; that he intended to use the Plaintiffs' monies to pay his personal living expenses; and that he was paying, or intended to pay, promoters a commission for the monies such promoters solicited from other investors for MILLER and that such commissions would be paid from the Plaintiff's funds without an accounting therefor.

FIRST AMENDED COMPLAINT; JURY TRIAL DEMAND

## FIRST CLAIM FOR RELIEF

### Fraud in connection with the Purchase or Sale of Securities;

### Violations of Section 10(b) of the Exchange Act and Rule 10b-5

### (Against all Defendants except IRA RESOURCES)

119.  Plaintiffs re-allege and incorporate herein by this reference paragraphs 1 through 118, inclusive, as though set forth in full herein.

120.  The investment scheme formulated and implemented by the Defendants involved, on the part of the Plaintiffs and each of them, (1) an investment of money, (2) in a common enterprise, and (3) with the expectation of profits to be derived solely from the efforts of others.  As such, the investment scheme constituted an "investment contract" and hence a security within the Securities Exchange Act.

121.  Such securities and the solicitation activities of the Defendants were non-registered and non-exempted under the Act and constituted an unlawful offering by the Defendants of the purchase or sale thereof.

122.  In addition, the Defendants, by engaging in the conduct described above, directly or indirectly, in connection with the purchase or sale of a security, by the use of means or instrumentalities of interstate commerce, of the mails, or of the facilities of a national securities exchange, with scienter:

      a)  employed devices, schemes, or artifices to defraud;

      b)  made untrue statements of a material fact or omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

      c)  engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons.

123.  The Defendants carried out a plan, scheme and course of conduct which was intended to and did deceive the Plaintiffs as alleged herein, and caused Plaintiffs to deliver millions of dollars to the Defendants for the purpose of the purchase of the investments alleged herein in their individual accounts.  In

1 | furtherance of this unlawful scheme, plan and course of conduct, the Defendants
2 | took the actions set forth herein.

3 |     124.  The Defendants (i) employed devices, schemes, and artifices to defraud;
4 | (ii) made untrue statements of material fact and/or omitted to state material facts
5 | necessary to make the statements not misleading; and (iii) engaged in acts, practices,
6 | and a course of conduct which operated as a fraud and deceit upon the Plaintiffs as
7 | purchasers of the represented securities in an effort to enrich themselves through
8 | undisclosed manipulative tactics by which they wrongfully misappropriated funds in
9 | violation of Section 10(b) and Rule 10b-5.

10 |     125.  The Defendants, directly and indirectly, by the use, means or
11 | instrumentalities of interstate commerce and/or of the mails, engaged and
12 | participated in a continuous course of conduct to conceal adverse material
13 | information about the true nature of the purported investments orchestrated by the
14 | Defendants, as specified herein.

15 |     126.  The Defendants had actual knowledge of the misrepresentations and
16 | omissions of material facts set forth herein, or acted with reckless disregard for the
17 | truth in that she failed to ascertain and to disclose such facts, even though such facts
18 | were available to them.  The Defendants' material misrepresentations and/or
19 | omissions were done knowingly or recklessly and for the purpose and effect of
20 | concealing the truth.

21 |     127.  As a result of the dissemination of the materially false and misleading
22 | information and failure to disclose material facts, as set forth above, Plaintiffs
23 | entrusted their funds with the Defendants to purchase the investments alleged herein
24 | in their individual accounts, relying directly on the false and misleading statements
25 | made by the Defendants.

26 |     128.  Plaintiffs were ignorant of the falsity of the misrepresentations and
27 | omissions when they were made, and believed them to be true.  Had Plaintiffs
28 | known the truth concerning the false representations about their investments, which

FIRST AMENDED COMPLAINT; JURY TRIAL DEMAND

1  none of the Defendants disclosed, Plaintiffs would not have invested any funds with

2  the Defendants for the purchase of securities as set forth herein.

3      129.  By engaging in the conduct described above, the Defendants violated

4  Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder,

5  17 C.F.R. § 240.10b-5.

6      130.  As a direct and proximate result of Defendants' wrongful conduct,

7  Plaintiffs have suffered damages in connection with their purported investments  in

8  amounts to be proven.

9                **SECOND CLAIM FOR RELIEF**

10          **Violations of the Investors Advisors Act of 1940;**

11  **Failure to Register as Investment Advisor with Securities and Exchange**

12      **Commission and Unlawful Investment Advisory Contract**

13          **(Against all Defendants except IRA RESOURCES)**

14      131.  Plaintiffs re-allege and incorporate herein by this reference paragraphs

15  1 through 130, inclusive, as though set forth in full herein.

16      132.  Under 15 U.S.C. section 80b-2, an "investment advisor" is defined as,

17  among other things, "any person who, for compensation, engages in the business of

18  advising others, either directly or through publications or writings, as to the value of

19  securities or as to the advisability of investing in, purchasing, or selling securities . .

20  . ."  Certain exceptions to the definitions of "investment advisor" are provided in

21  that code section, none of which are applicable to the present action.

22      133.  Under 15 U.S.C. section 80b-3, it is "unlawful for any investment

23  adviser, unless registered [with the United States Securities and Exchange

24  Commission], to make use of the mails or any means or instrumentality of interstate

25  commerce in connection with his or its business as an investment adviser."

26      134.  Furthermore, under 15 U.S.C. section 80b-5,

27          [n]o investment adviser . . . shall make use of the mails or any means or

28          instrumentality of interstate commerce, directly or indirectly, to enter

24

FIRST AMENDED COMPLAINT; JURY TRIAL DEMAND

into, extend, or renew any investment advisory contract . . . if such contract . . . provides for compensation to the investment adviser on the basis of a share of capital gains upon or capital appreciation of the funds or any portion of the funds of the client . . . .

135.   Under 15 U.S.C. section 80b-15, every contract made in violation of sections 80b-3 and 80b-5, among others, and every contract the performance of which involves the violation of, or the continuance of any relationship or practice in violation of, sections 80b-3 and 80b-5, among others, shall be void as regards the rights of any person who, in violation of any such provision, rule, or regulation, shall have made or engaged in the performance of any such contract.

136.   With respect to the investment transactions described above, MILLER, JAMS, PACSTAR, PACSTAR MANAGEMENT, GLOBAL CHOICE,  GLOBAL FUNDS, GLOBAL   ASSET, FORTE FINANCIAL, VESTED STANDARD, STARENS, and/or DOES 1-10, inclusive, each acted as an "investment advisor" as that phrase is defined in 15 U.S.C. section 80b-2 and, therefore, at the time of the investment transactions, each said Defendant was required to be registered as an investment advisor with the United States Securities and Exchange Commission.  At all times relevant herein, none of said Defendants were registered as an investment advisor with the United States Securities and Exchange Commission and, therefore, the subject investment transaction contracts are void.  Furthermore, the investment transaction contracts provided to the Defendants and each of them shares capital gains upon, or capital appreciation of, the funds or a portion of the funds of Plaintiffs.

137.   As a result of the failure of said Defendants or any of them to register as an investment advisor with the United States Securities and Exchange Commission, and as a result of provisions in the investment transaction contracts providing shares of the capital gains and/or capital appreciation of Plaintiffs' funds, Plaintiffs herein may seek, and hereby seek, from the Defendants rescission of the subject investment

transaction contracts, and restitution of any and all sums Plaintiffs paid in connection with those investment transaction contracts (less any sums received in connection with those investment transaction contracts).

### THIRD CLAIM FOR RELIEF

#### Violation of 15 U.S.C. Section 78o;

#### Failure to Register as Broker-Dealer with the Securities and Exchange Commission

#### (Against all Defendants except IRA RESOURCES)

138.   Plaintiffs re-allege and incorporate herein by this reference paragraphs 1 through 137, inclusive, as though set forth in full herein.

139.   Under 15 U.S.C. section 78c, the term "broker" is defined as "any person engaged in the business of effecting transactions in securities for the account of others," and the term "dealer" is defined as "any person engaged in the business of buying and selling securities for such person's own account through a broker or otherwise."   Certain exceptions to the definitions of "broker" and "dealer" are provided in that code section, none of which are applicable to the present action.

140.   Under 15 U.S.C. section 78o, it is unlawful "for any broker or dealer . . to make use of the mails or any means or instrumentality of interstate commerce to effect any transactions in, or to induce or attempt to induce the purchase or sale of, any security (other than an exempted security or commercial paper, bankers' acceptances, or commercial bills) unless such broker or dealer is registered" with the United States Securities and Exchange Commission.

141.   Under 15 U.S.C. section 78cc, every contract made in violation of section 78o, among others, and every contract the performance of which involves the violation of, or the continuance of any relationship or practice in violation of, section 78o, among others, shall be void as regards the rights of any person who, in violation of any such provision, rule, or regulation, shall have made or engaged in the performance of any such contract.

FIRST AMENDED COMPLAINT; JURY TRIAL DEMAND

142. With respect to the investment transactions described above, the Defendants and each of them acted as a "broker" and/or "dealer," as that term is defined in 15 U.S.C. section 78c and, therefore, at the time of the investment transactions, each was required to be registered as a broker and/or dealer with the United States Securities and Exchange Commission. At all times relevant herein, none of the Defendants were registered as a broker and/or dealer with the United States Securities and Exchange Commission and, therefore, the subject investment transaction contracts are void. As such, Plaintiffs herein may seek, and hereby seek, from the Defendants rescission of the subject investment transaction contracts, and restitution of any and all sums Plaintiffs paid in connection with those investment transaction contracts (less any sums received in connection with those investment transaction contracts).

## FOURTH CLAIM FOR RELIEF

### Violation of California Corporations Code Section 25210;

### Failure to Procure Broker-Dealer Certificate from California Commissioner of Corporations

### (Against all Defendants except IRA RESOURCES )

143. Plaintiffs re-allege and incorporate herein by this reference paragraphs 1 through 142, inclusive, as though set forth in full herein.

144. Under California Corporations Code section 25004, a "broker-dealer" is defined as "any person engaged in the business of effecting transactions in securities in this state for the account of others or for his own account." Certain exceptions to that definition of "broker-dealer" are provided in that code section, none of which are applicable to the present action.

145. Under California Corporations Code section 25210, no broker-dealer is allowed to effect any transaction in, or induce or attempt to induce the purchase or sale of, any security in the State of California unless the broker-dealer has first applied for and secured from the California Commissioner of Corporations a

1    certificate, then in effect, authorizing that person to act in that capacity.

2         146.   Under California Corporations Code section 25501.5, any person who
3    purchases a security from or sells a security to a broker-dealer that is required to be
4    licensed and has not, at the time of the sale or purchase, applied for and secured
5    from the California Commissioner of Corporations a certificate as required in
6    section 25210, that is in effect at the time of the sale or purchase authorizing that
7    broker-dealer to act in that capacity, may bring an action for rescission of the sale or
8    purchase or, if the plaintiff or the defendant no longer owns the security, for
9    damages.  Furthermore, under that section, the Court, in its discretion, may award
10   reasonable attorney's fees and costs to a prevailing plaintiff under that section.

11        147.   With respect to the investment transactions described above, the
12   Defendants and each of them acted as a "broker-dealer," as that term is defined in
13   California Corporations Code section 25004 and, therefore, at the time of the
14   investment transactions, each Defendant was required to possess a certificate issued
15   by the California Commissioner of Corporations authorizing her to act as a "broker-
16   dealer."   At all times relevant herein, none of the Defendants possessed such a
17   certificate and, therefore, Plaintiffs herein may seek, and hereby seek, from them
18   rescission of the subject investment transaction contracts, restitution of any and all
19   sums Plaintiffs paid in connection with those investment transaction contracts (less
20   any sums received in connection with those investment transaction contracts),
21   damages, and the recovery of attorney's fees and costs incurred in pursuing this
22   action.

23                          **FIFTH CLAIM FOR RELIEF**

24   **Violation of sections 25110 and 25503 of the California Corporation Code;**

25                      **Sale of Unqualified Securities**

26          **(Against all Defendants except IRA RESOURCES)**

27        148.   Plaintiffs re-allege and incorporate herein by this reference paragraphs
28   1 through 147, inclusive, as though set forth in full herein.

28

FIRST AMENDED COMPLAINT; JURY TRIAL DEMAND

149.  Corporations Code section 25110 makes it unlawful to offer or sell nonexempt, unqualified securities.  Corporation Code section 25503 provides that

> any person who violates Section 25110 . . . shall be liable to any person acquiring from him the security sold in violation of such section, who may sue to recover the consideration he paid for such security with interest thereon at the legal rate, less the amount of any income received therefrom, upon the tender of such security, or for damages, if he no longer owns the security or if the consideration given for the security is not capable of being returned.

150.  As alleged above, the Defendants offered and sold to Plaintiffs unqualified securities that were subject to qualification and not exempt from qualification.  As a result, the Defendants, individually and collectively, are liable to Plaintiffs, who are entitled to rescission of the purchase of securities and restitution of any monies paid to any of them.

151.  The pattern of conduct of the Defendants, as set forth above, violated section 25110, and demonstrates the necessity for granting permanent injunctive and ancillary relief restraining such and similar acts in violation of section 25110, as well as providing restitution or disgorgement to investors.

## SIXTH CLAIM FOR RELIEF

**Violation of California Corporations Code Section 2540;1**

**Unlawful Offer and Sale of Securities by Means of Untrue Statements or Omissions of Material Fact**

**(Against all Defendants except IRA Resources)**

152.  Plaintiffs re-allege and incorporate herein by this reference paragraphs 1 through 151, inclusive, as though set forth in full herein.

153.  Corporations Code section 25401 makes it unlawful to offer or sell securities by means of untrue statements or omissions of material fact. This section states:

29

1
2
3
4
5
6

It is unlawful for any person to offer or sell a security in this state or buy or offer to buy a security in this state by means of any written or oral communication which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.

7   154.   Corporations Code section 25501 provides that "[a]ny person who
8   violates Section 25401 shall be liable to the person who purchases a security from
9   him or sells a security to him, who may sue either for rescission or for damages . . .
10  ."  That section also provides that, "[u]pon rescission, a purchaser may recover the
11  consideration paid for the security, plus interest at the legal rate, less the amount of
12  any income received on the security, upon tender of the security."

13   155.   As alleged above, the Defendants and each of them made untrue
14  statements of material fact without exercising reasonable care to determine whether
15  or not the statements were true.  Furthermore, Plaintiffs did not have any knowledge
16  of the falsity of those statements when any of the Defendants made them.  For those
17  reasons, the agreements to purchase the equity interests may, and should be,
18  rescinded under the Corporations Code.

19   **SEVENTH CLAIM FOR RELIEF**
20   **Common Law Fraud and Deceit**
21   **(Against Defendants MILLER, JAM, PACSTAR, PACSTAR**
22  **MANAGEMENT, GLOBAL FUND, GLOBAL CHOICE, GLOBAL CHOICE**
23   **ASSETS, STAREN and Does 1 through 10, Inclusive)**

24   156.   Plaintiffs re-allege and incorporate herein by this reference paragraphs
25  1 through 155, inclusive, as though set forth in full herein.

26   157.   As alleged above, Defendants made representations to Plaintiffs that
27  were false and untrue, and/or knowingly and willfully conspired and agreed among
28  themselves to cause damage to Plaintiffs by soliciting and inducing them to invest in

FIRST AMENDED COMPLAINT; JURY TRIAL DEMAND

1 fictitious investments by way of such false and untrue representations and by
2 operating, managing, and/or controlling a Ponzi scheme to the extent that the
3 Defendants used the principal of other investors to remit to the Plaintiffs as returns
4 or "profits" on the principal amounts invested by Plaintiffs.

5      158.  As set forth more specifically above, Defendants represented to
6 Plaintiffs, either directly or indirectly through others with the knowledge and
7 expectation that these others would communicate the representations, among other
8 things that Plaintiffs' monies would be invested in real property, oil wells, foreign
9 currency exchanges, barter companies, and various other investment sources or
10 entities (aggregately the "investment enterprises") that would generate high returns
11 in short periods of time, and that the purported investment program was safe, secure,
12 legitimate, and legal.

13      159.  These representations were false and untrue.  Upon information and
14 belief, the money Plaintiffs paid to the Defendants was not used to invest in any of
15 the investment enterprises which were a mere shams and fictions.  Upon information
16 and belief, the purported investment enterprises were in fact part of a Ponzi scheme,
17 operated, managed, and/or controlled by Defendants, and each of them, in which
18 money paid by investors into the scheme were used to pay the alleged returns on
19 investments of other investors.

20      160.  Upon information and belief, Defendants, and each of them, knowingly
21 and willfully acted pursuant to, in accordance with, and in furtherance of, the
22 conspiracy to operate, manage, and/or control the Ponzi scheme, and lent aid and
23 encouragement to one another, and ratified and adopted the acts of one another, with
24 respect to such conspiracy.  Furthermore, upon information and belief, Defendants,
25 and each of them, greatly benefited financially from the operation, management,
26 and/or control of the Ponzi scheme, as alleged herein.

27      161.  When Defendants made the representations set forth above, they knew
28 them to be false and made these representations with the intention to deceive and

1  defraud Plaintiffs and to induce Plaintiffs to act in reliance on these representations

2  by investing money in these purported investments, or with the expectation that

3  Plaintiffs would so act.

4  162.  Plaintiffs, at the time the representations were made by Defendants and

5  at the time Plaintiffs took the actions herein alleged, were ignorant of the falsity of

6  Defendants' representations and believed them to be true.  In reliance on these

7  representations, Plaintiffs were induced to and did purchase and/or maintain the

8  purported investments as alleged herein.  Had Plaintiffs known the actual facts, they

9  would not have taken such action. Plaintiffs' reliance on Defendants' representations

10 was justified because Defendants were in a better position than Plaintiffs to ascertain

11 the truth or falsity of such representations.  In fact, initially, as alleged above,

12 several Plaintiffs received money from Defendants, purportedly constituting their

13 investment returns, further leading them to believe that the representations were

14 true.

15 163.  As a proximate result of Defendants' conspiracy to commit fraud and

16 fraudulent conduct as herein alleged, Plaintiffs have each been damaged in the

17 aggregate amounts hereinabove alleged and in the respective sums according to

18 proof.

19 164.  Upon information and belief, Defendants, and each of them, willfully

20 and maliciously engaged in the conduct complained of, above, with the intent to

21 injure vex and annoy Plaintiffs so as to constitute oppression, fraud and malice,

22 within the meaning of California Civil Code Section 3294 and thus Plaintiffs are

23 entitled to an award of exemplary damages from Defendants, and each of them, in

24 an amount sufficient to punish and deter them from engaging in such conduct in the

25 future.  The malice, oppression, or fraud was authorized by, and/or conduct of, one

26 or more officers, directors, or managing agents of both Defendants who acted on

27 behalf of all Defendants.

28 ///

FIRST AMENDED COMPLAINT; JURY TRIAL DEMAND

## EIGHTH CLAIM FOR RELIEF

### Civil Conspiracy

### (Against all Defendants except IRA RESOURCES)

165. Plaintiffs re-allege and incorporate herein by this reference paragraphs 1 through 164, inclusive, as though set forth in full herein.

166. Plaintiffs allege that from on or about 2000 through 2008, Defendants, and each of them, knowingly and willingly conspired and/or agreed among themselves and/or together with other persons or entities to defraud Plaintiffs by misrepresenting that investor funds would be used to invest in specific select transactions and have misappropriated investor funds for their own personal use.

167. Plaintiffs allege that the acts in pursuance of the above-described conspiracy and/or agreement continued from in or about 2000 through 2008. Defendants, and each of them, have continuously deceived Plaintiffs as to the true nature and whereabouts of Plaintiffs' funds in furtherance of the above-described conspiracy and/or agreement, and continue to do so today.

168. As the direct and proximate cause of Defendants' acts, Plaintiffs have each been damaged in the aggregate amounts hereinabove alleged and in the respective sums according to proof.

169. The acts alleged herein committed by Defendants, and each of them, were intentional, malicious, despicable, outrageous and in conscious disregard of the rights of the Plaintiffs with the intent to injure, vex and oppress so as to warrant the imposition of punitive and exemplary damages in a sum subject to proof at trial.

## NINTH CLAIM FOR RELIEF

### Aiding and Abetting Securities Fraud;

### Violation of California Corporations Code Section 25504.1

### (Against all Defendants)

170. Plaintiffs re-allege and incorporate herein by this reference paragraphs 1 through 169, inclusive, as though set forth in full herein.

33

FIRST AMENDED COMPLAINT; JURY TRIAL DEMAND

171. California Corporations Code Section 25504.1 provides that "[a]ny person who materially assists in any violation of Section 25110…or 25401…with intent to deceive or defraud, is jointly and severally liable with any other person liable" for the violation.

172. The Defendants (a) knew that MILLER'S  investment contracts and Ponzi schemes were fraudulent and constituted a breach or breaches of duty owed to Plaintiffs and gave material assistance or encouragement to MILLER to so act; or (b) separately gave material assistance to MILLER in accomplishing the fraudulent Ponzi scheme procuring the investment contracts.

173. Defendants  and  each of them, actively participated in the receipt and distribution of funds received by those Defendants as alleged above in furtherance of the fraudulent scheme.

174. The conduct of the Defendants and each of them separately considered based upon the foregoing, constitutes material assistance of violations of Corporations Code Sections 25110 and 25401.

175. As a direct and proximate result of the acts of the Defendants and each of them, Plaintiffs have each been damaged in the aggregate amounts hereinabove alleged and in the respective sums according to proof.

**TENTH CLAIM FOR RELIEF**

**Aiding and Abetting of Fraud/Breach of Fiduciary Duty**

**(Against Defendants IRA RESOURCES and Does 1 through 10, Inclusive)**

176. Plaintiffs re-allege and incorporate herein by this reference paragraphs 1 through 175, inclusive, as though set forth in full herein.

177. Defendant IRA RESOURCES  and  Does 1 through 10, inclusive, and each of them, acted as custodians for those IRA and pension plan funds and as such were fiduciaries for and to the Plaintiffs.

178. In conjunction with the conduct of MILLER, the Defendants (a) knew or should have known that the investment enterprises, included those conducted by

34

and through FORTE FINANCIAL, were either fraudulent or without any merit or otherwise valueless.   The Defendants,   following their remittance to FORTE FINANCIAL of those funds of Plaintiffs over which the Defendants acted as custodians,   failed to take any reasonable steps, or any steps at all, to monitor and oversee the custodial funds to ensure their proper handling; such failure included, but was not limited to, obtaining financial statements from FORTE FINANCIAL or any accountings by FORTE  FINANCIAL as to the continuing nature of its business or the truthfulness of  any of the investment enterprises or the status of any of the purported accounts for any of the funds paid over to FORTE FINANCIAL by the Defendants for which the Defendants remained as custodians. Such failures and omissions constituted derelictions and breaches of duty owed to Plaintiffs by the Defendants which, in turn, gave substantial assistance or encouragement to MILLER,    JAM,    PACSTAR,    PACSTAR    MANAGEMENT,    VESTED STANDARD,  GLOBAL CHOICE, GLOBAL FUNDS, GLOBAL ASSET, FORTE FINANCIAL and DOES 1-10, inclusive  to so act, including but not limited to paying over custodial funds to MILLER and to JAM and others for their personal use and squandering and  accomplish the fraudulent Ponzi scheme alleged above.

179.   Defendants DOES 1 through 10, inclusive, actively participated in the receipt and distribution of funds received by the Defendants  in furtherance of the fraudulent scheme.

180.   The conduct of  DOES 1 through 10, inclusive, separately considered based upon the foregoing, constitutes aiding and abetting of fraud and a breach of fiduciary duty to Plaintiffs.

181.   As a direct and proximate result of the acts of Defendants DOES 1 through 10, inclusive, Plaintiffs have each been damaged in the aggregate amounts hereinabove alleged and in the respective sums according to proof.

///

///

FIRST AMENDED COMPLAINT; JURY TRIAL DEMAND

## ELEVENTH CLAIM FOR RELIEF

### Negligence

### (Against Defendant IRA RESOURCES)

182. Plaintiffs re-allege and incorporate herein by this reference paragraphs 1 through 181, inclusive, as though set forth in full herein.

183. At all material times herein alleged, Defendant IRA RESOURCES was, and is, a custodian duly qualified and approved by applicable governmental tax authorities to act as such for individual retirement accounts and other retirement-plan accounts and the funds and assets held in them (collectively or respectively "retirement funds"). As part of its functions and purposes, the Defendant operated as a custodian for retirement funds placed for investment or holding by third party entities, qualified to do so, pursuant to the instructions of the beneficiaries of the retirement funds under applicable laws and regulations permitting the Defendant to follow such instructions, without loss of retirement-plan tax treatment, as "self-directed" retirement plans.

184. The Defendant received retirement funds "rolled-over" or transferred from other custodians at the instructions of the Plaintiffs for whom such third-party custodians held such retirement funds; the Plaintiffs caused such roll-overs and/or transfers to be effected in order to utilize the Defendant as a custodian for the investment of their respective retirement funds with FORTE FINANCIAL under the "self-directed" retirement plan programs allowed by the Internal Revenue Service and any other applicable governmental tax authority. As a result of their respective solicitations by MILLER and STAREN, Plaintiffs did utilize IRA RESOURCES for the purpose alleged above, and IRA RESOURCES did cause such retirement funds to be transferred to, and deposited with, FORTE FINANCIAL for which the Defendant continued to remain custodian.

185. At all material times herein alleged, Defendant IRA RESOURCES had duties of care to each Plaintiff for whom the Defendant acted as custodian including

36

FIRST AMENDED COMPLAINT; JURY TRIAL DEMAND

1 | all funds invested with FORTE FINANCIAL under the aforementioned "self-
2 | directed" retirement plans; such duties of care included, but were not necessarily
3 | limited to,  ensuring at minimum that FORTE FINANCIAL was a viable and
4 | responsible entity that would handle, manage and/or invest the retirement funds over
5 | which IRA acted as custodian according to the representations made by it. The
6 | Defendant was negligent in that it breached its duties of care to the Plaintiffs for
7 | whom it acted as custodian in connection with aforementioned purposes by failing
8 | to oversee the subject retirement funds as alleged above.

9 |     186.  As a proximate result of the negligence of the Defendant as alleged
10 | above, the Plaintiffs for whom the Defendant acted as custodian were damaged by
11 | the loss of their retirement funds placed with FORTE  FINANCIAL by and through
12 | the Defendant in the respective amounts according to proof.

13 | **TWELFTH CLAIM FOR RELIEF**
14 | **Breach of Fiduciary Duty**
15 | **(Against Defendants MILLER, IRA RESOURCES, FORTE FINANCIAL,**
16 | **VESTED STANDARD and DOES 1-10, Inclusive)**

17 |     187.  Plaintiffs re-allege and incorporate herein by this reference paragraphs
18 | 1 through 186, inclusive, as though set forth in full herein.

19 |     188.  The Defendants owed Plaintiffs fiduciary duties in that, as alleged
20 | hereinabove, Plaintiffs reposed trust and confidence in them, with the Defendants
21 | obtaining control over Plaintiffs' investments in their purported investments.
22 | Furthermore, as alleged herein, the Defendants knowingly and voluntarily accepted
23 | and/or assumed such trust and confidence, and agreed to act for the benefit of
24 | Plaintiffs.  Thus the Defendants were at all material times vested with the duties of a
25 | fiduciary, including but not limited to, the duties of full disclosure, loyalty, and fair
26 | and honest dealings with Plaintiffs.

27 |     189.  Plaintiffs allege that the Defendants breached their fiduciary duties to
28 | Plaintiffs by, as alleged more specifically above, failing to act solely for the benefit

37

FIRST AMENDED COMPLAINT; JURY TRIAL DEMAND

1 | of Plaintiffs and failing to disclose material facts that would have affected

2 | Plaintiffs' decisions to invest in, or maintain their investments in, purported

3 | securities, and failed to deal honestly and fairly with Plaintiffs.

4 |      190. Furthermore, Plaintiffs allege the Defendants, and each of them,

5 | knowingly and willfully conspired and agreed among themselves that they would so

6 | breach their fiduciary duties to Plaintiffs. Furthermore, the Defendants and each of

7 | them knowingly and willfully acted pursuant to, in accordance with, and in

8 | furtherance of, the conspiracy as alleged above, and lent aid and encouragement to

9 | one another, and ratified and adopted the acts of one another, with respect to such

10 | scheme. Furthermore, upon information and belief, the Defendants greatly

11 | benefited financially from the conspiracy as alleged above.

12 |      191. As a direct and proximate result of the Defendants' conspiracy and

13 | breach of fiduciary duties, Plaintiffs have been harmed in sums alleged above.

14 |      192. Upon information and belief, Defendants, and each of them, willfully

15 | and maliciously engaged in the conduct complained of, above, with the intent to

16 | injure vex and annoy Plaintiffs so as to constitute oppression, fraud and malice,

17 | within the meaning of California Civil Code Section 3294 and thus Plaintiffs are

18 | entitled to an award of exemplary damages from Defendants, and each of them, in

19 | an amount sufficient to punish and deter them from engaging in such conduct in the

20 | future. The malice, oppression, or fraud was authorized by, and/or conduct of, one

21 | or more officers, directors, or managing agents of both Defendants who acted on

22 | behalf of all Defendants.

23 | **THIRTEENTH CLAIM FOR RELIEF**

24 | **Conversion**

25 | **(Against all Defendants)**

26 |      193. Plaintiffs re-allege and incorporate herein by this reference paragraphs

27 | 1 through 192, inclusive, as though set forth in full herein.

28 |      194. Plaintiffs' maintain an immediate right of possession to their invested

FIRST AMENDED COMPLAINT; JURY TRIAL DEMAND

1  funds, as set forth above.

2      195.  Defendants, and each of them, have wrongfully disposed of Plaintiffs'

3  funds and interfered with the funds that denies and is inconsistent with Plaintiffs'

4  right of dominion over their funds.

5      196.  Defendants, and each of them, have intentionally exercised dominion

6  by the affirmative acts and omissions as set forth above.

7      197.  Defendants' actions have proximately caused damages on the part of

8  Plaintiffs in the sums set forth above.

9      198.  The acts alleged herein committed by Defendants, and each of them,

10  were intentional, malicious, despicable, outrageous and in conscious disregard of the

11  rights of the Plaintiffs with the intent to injure, vex and oppress so as to warrant the

12  imposition of punitive and exemplary damages in a sum subject to proof at trial.

13      **<u>FOURTEENTH CLAIM FOR RELIEF</u>**

14      **Imposition of Constructive Trust**

15      **(Against all Defendants)**

16      199.  Plaintiffs re-allege and incorporate herein by this reference paragraphs

17  1 through 198, inclusive, as though set forth in full herein.

18      200.  The money and property of the Plaintiffs were gained by the

19  Defendants through their fraudulent acts, breaches of fiduciary duties, and

20  conversions as hereinabove alleged. Retention of such monies or properties by the

21  Defendants or any of them would constitute their unjust enrichment.

22      201.  By virtue of their collective and respective acts and omission as

23  hereinabove alleged, the Defendants, and each of them hold the monies invested by

24  Plaintiffs, as well as any property, personal or real, tangible or intangible, acquired

25  with such money, as constructive trustees for Plaintiffs' respective and collective

26  benefits.

27  ///

28  ///

FIRST AMENDED COMPLAINT; JURY TRIAL DEMAND

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray judgment against Defendants, and each of them, as follows:

1. For rescission of the agreements to purchase securities, and restitution of any sums Plaintiffs paid to Defendants, less any monies paid by Defendants to Plaintiffs;

2. For compensatory damages in an amount to be proven;

3. For exemplary damages in an amount to be proven;

4. For prejudgment interest on each purported investment in securities at the legal rate from each Plaintiff's date of purchase or otherwise according to proof;

5. For the imposition of a constructive trust on monies and properties of the Defendants held by them for the Plaintiffs or acquired by them by use of the monies provided to them by the Plaintiffs in order to compel the Defendants' disgorgement of ill-gotten gains, profits, and other unlawfully obtained benefits to prevent their unjust enrichment as a result thereof;

6. For attorneys' fees and costs of suit incurred herein as provided by law;

7. For joint and several liability of the Defendants; and

8. For such other and further relief as the court may deem proper.

### **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a trial by jury on all claims set forth herein.

Dated: July 14, 2009                    BUUS KIM KUO & TRAN APC


By: _Alexander J. Chang_____
ALEXANDER J. CHANG
Attorneys for Plaintiffs

40

FIRST AMENDED COMPLAINT; JURY TRIAL DEMAND